

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

MAR 2 0 2015

CLERK, U.S. DISTRICT COURT
By_____
            Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ZSA ZSA WILLIIAMS,                       §
    PLAINTIFF,                       §
                                         §
VS.                                      §   CIVIL ACTION NO. § 4:14-CV-114-BJ
                                         §
CAROLYN W. COLVIN,                       §
ACTING COMMISSIONER OF SOCIAL            §
SECURITY,                                §
    DEFENDANT.                       §

## MEMORANDUM OPINION AND ORDER

Plaintiff Zsa Zsa Williams ("Williams") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits under Title II, and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). For the reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

### I.   STATEMENT OF THE CASE

In April 2011, Williams applied for social security benefits, alleging that her disability began on September 30, 2010. (Transcript ("Tr.") 11, 171-83.) Her applications were denied initially and on reconsideration, and Williams requested a hearing before an administrative law judge ("ALJ"). (Tr. 11, 61-76, 79-84, 87.) An ALJ held hearings on February 12, 2013 and June 25, 2013 and issued a decision on August 2, 2013 that Williams was not disabled. (Tr. 8-20, 27-

1

56.) On February 3, 2014, the Appeals Council denied William's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382a(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20

2

C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof is on the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In her brief, Williams presents the following issues:

1.  Whether the ALJ's hypothetical question to the vocational expert ("VE") reasonably incorporated all of the disabilities recognized by the ALJ and whether the ALJ's reliance on the VE's testimony was unjustified; and

2.  Whether the Appeals Council failed to consider new and material evidence submitted to it after the ALJ's decision.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 7-13.)

### IV.   ALJ DECISION

In her August 2, 2013 decision, the ALJ found that Williams met the insured status requirements of the SSA through September 30, 2013 and had not engaged in any substantial gainful activity since September 30, 2010, her alleged onset of disability date. (Tr. 13.) The ALJ further found that Williams had the following severe impairments: "obesity, lumbar degenerative disc disease, hypertension with reduced kidney function, degenerative joint disease of the knees, sleep apnea by history, major depressive disorder with psychotic features, pain disorder, and anxiety disorder." (Tr. 13.) Next, the ALJ held that none of William's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. 46.) As to Williams' residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to sustain work while lifting/carrying 20 pounds occasionally and 10 pounds frequently. She is able to stand/walk for 6 of 8 hours and sit for 6 of 8 hours. The claimant is limited to occasional operation of foot controls. She is restricted from climbing, crouching, and crawling. The claimant is limited to no more than occasional balancing, stooping, and kneeling. She must avoid work at unprotected heights or around

4

> hazardous moving machinery.  Work must be indoors with an accessible
> bathroom on the work premises.  From a mental standpoint, the claimant is
> capable of sustaining attention, concentration and pace sufficient for
> understanding, remembering, and carrying out detailed, but noncomplex tasks
> within a routine work setting on a regular and continuing basis.  The claimant is
> capable of occasional interaction with others, but the job should be one working
> with things, rather than people.

(Tr. 15 (emphasis omitted).)  The ALJ next found that Williams was unable to perform her past

relevant work.  (Tr. 18.)  Then, the ALJ opined, based on Williams' RFC, age, education, and

work experience, and the testimony of the VE, that Williams could perform other jobs of laundry

worker, inspector, and production worker that existed in significant numbers in the national

economy.  (Tr. 18-19.)  Consequently, the ALJ found that Williams was not disabled.  (Tr. 19-

20.)

## V.   DISCUSSION

### A.  Hypothetical Question to the VE

Williams argues that the ALJ's hypothetical to the VE did not reasonably incorporate all

the disabilities of the claimant that were recognized by the ALJ.  (Pl.'s Br. at 1, 7-10.)  Williams

argues that the ALJ found at Step Two that she had the severe impairments of, *inter alia*,  severe

major depressive disorder with psychotic features, pain disorder, and anxiety disorder and then

proceeded to find that Williams had moderate restrictions in concentration, persistence, or pace.

(Pl.'s Br. at 8.)  Williams further states:

> The hypothetical question to the VE does not adequately incorporate the
> ALJ's step 2 and [Psychiatric Review Technique ("PRT")] findings.  Limiting the
> hypothetical individual to detailed but not complex work does not adequately
> convey limitations in concentration, persistence, or pace.  The single mental
> limitation in the hypothetical, "simple work" is not descriptive enough. . . .  The
> VE did not consider moderate deficiencies in concentration, persistence, or pace,

> in formulating her answer.  The Plaintiff would contend that the omission of the
> PRT-type mental limitations, recognized by the ALJ in the decision, from the
> hypothetical question, makes the reliance on the VE's testimony fatally flawed.
> Had the mental limitations been included in the question to the VE, the VE's
> testimony may have been different.  The fact that the jobs cited as example by the
> VE carrying a reasoning level of 1 does not salvage the hypothetical question.

(Pl.'s Br. at 9.)

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).  The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

In this case, as noted above, the ALJ found that Williams had the mental RFC to be "capable of sustaining attention, concentration and pace sufficient for understanding, remembering, and carrying out detailed, but noncomplex tasks within a routine work setting," and "capable of occasional interaction with others, but the job should be one working with things, rather than people." (Tr. 15.)  Further, the ALJ included all such limitations that he had found in the RFC determination in the hypothetical question to the VE.  (Tr. 51.)  The VE testified that an individual limited to such work could perform the jobs of laundry worker,

inspector, or production worker.  (Tr. 19, 52.)  The ALJ relied on the VE's testimony that specifically related to the functional limitations that the ALJ actually **found** in his RFC assessment.  Because the ALJ's hypothetical to the VE "tracked" the RFC assessment, the ALJ did not commit error.  *See Berry v. Astrue*, No. 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue,* No. 3:10-CV-1413-BK, 2011 WL 540299, at *6 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments).

Williams argues that the ALJ's RFC determination and hypothetical to the VE limiting her to detailed but not complex work does not adequately convey the limitation the ALJ had earlier found that Williams had moderate restrictions in concentration, persistence, or pace. (Pl.'s Br. at 7-10.)  The Court notes that federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a.  In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment.    20 C.F.R.  §§ 404.1520a(b)(1), 416.920a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).  For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes

C, of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2) & (c), 416.920a(b)(2) & (c).[1]  "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[2] and 4) episodes of decompensation.   20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[3]  The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described.  20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  If the degree of functional loss falls below a specified level in each of the four areas,[4] the ALJ must generally find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  If the ALJ finds that the mental impairment is

---

[1] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

[2] The category of concentration, persistence or pace "refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[3] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme.  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more.  *Id.*  These four functional areas are known as the paragraph "B" criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

[4] If the degree of limitation in the first three functional areas is "none" or "mild" and "none" in the fourth area, the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

8

severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed

mental disorder of the Listing.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).[5]  To determine if

it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the

medical findings about the claimant's impairment and the rating of the degree of functional

limitation to the criteria of the appropriate listed mental disorder.  20 C.F.R. §§ 404.1520a(d)(2),

416.920a(d)(2).   If the impairment is severe but does not meet or equal a listed mental

impairment, then the ALJ must conduct an RFC assessment.   20 C.F.R. §§ 404.1520a(d)(3),

416.920a(d)(3); *see Boyd*, 239 F.3d at 705.

In this case, as stated above, the ALJ found that Williams suffered from, *inter alia*, the

severe impairments of severe major depressive disorder with psychotic features, pain disorder,

and anxiety disorder.  (Tr. 13.)  As to her mental impairments, the ALJ stated:

> In activities of daily living, the claimant has mild restriction.  In social
> functioning, the claimant has moderate difficulties.  With regard to concentration,
> persistence or pace, the claimant has moderate difficulties.  As for episodes of
> decompensation, the claimant has experienced no episodes of decompensation,
> which have been of extended duration.   Because the claimant's mental
> impairments do not cause at least two "marked" limitations or one "marked
> limitation and "repeated" episodes of decompensation, each of extended duration,
> the "paragraph B" criteria are not satisfied.

> The undersigned has also considered whether the "paragraph C" criteria
> are satisfied.   In this case, the evidence fails to establish the presence of the
> "paragraph C" criteria.

(Tr. 14.)

---

[5] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory
paragraph [of the Listing] and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed
impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate
medically the presence of a particular mental disorder." *Id.* "The criteria in paragraphs B and C describe
impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.*

9

In making her mental RFC determination, the ALJ relied, *inter alia*, on the following evidence in the record: (1) fact that the record contained "no evidence of mental health treatment;" (2) an August 9, 2011 psychological evaluation conducted by Gerald Stephenson, Ph.D. at the request of the Disability Determination Services in which he, *inter alia*,: (a) diagnosed Williams with major depressive disorder, anxiety disorder, and pain disorder; (b) assigned her a Global Assessment of Functioning ("GAF") score[6] of 60;[7] and (c) noted that Williams' financial difficulties "were a psychosocial stressor that contributed to her GAF assessment" (Tr. 340-44); (3) an August 17, 2011 Mental Residual Functional Capacity Assessment performed by State Agency Medical Consultant Richard Campa, Ph.D. ("SAMC Campa") in which he opined, *inter alia*, that Williams could "understand, remember and carry [out] detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond to changes in routine work settings" (Tr. 361) and (4) an August 17, 2011 Psychiatric Review Technique form in which SAMC Campa opined that Williams suffered from major depressive disorder that was severe with psychotic features, an anxiety disorder, and a pain disorder and (a) was mildly restricted in her activities of daily living; (b) had moderate difficulties in maintaining social functioning and concentration, persistence, or pace, and (c) no episodes of decompensation (Tr. 345-58).  (Tr. 17-18.)

---

[6] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM–IV).

[7] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  DSM-IV at 34.

As to Williams' claim that, in essence, the ALJ's mental determination limiting Williams to detailed but not complex work fails to adequately incorporate the moderate limitations in concentration, persistence, and pace that the ALJ had found earlier, the Court notes that the responsibility for determining the RFC falls to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995*).* The paragraph B criteria limitation of having a moderate limitation in maintaining concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of Williams' mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments." *Id.* These functions include the consideration of the claimant's abilities to: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. *Id.* at *6; *see also* 20 C.F.R. §§ 404.1545(c), 416.945(c). Moreover, "[w]hile the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the

11

hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

Based on the facts in this case, the ALJ's mental RFC determination limiting Williams to the performance of detailed but not complex work is not contradictory with the ALJ's finding in the "special technique" that Williams was moderately limited in her ability to maintain concentration, persistence, or pace. *See Bordelon v. Astrue*, 281 F. App'x 418, 422-23 (5th Cir. 2008) (finding restriction in the RFC determination to rare public interaction, low stress, and one-to-two step instructions reflect that the ALJ has reasonably incorporated the Plaintiff's moderate concentration, persistence, and pace limitations); *Westover v. Astrue*, No. 4:11-CV-816-Y, 2012 WL 6553102, at *9 (N.D. Tex. Nov. 16, 2012) ("[T]he ALJ's RFC determination limiting [the claimant] to only performing work that involved detailed instructions does not appear to be inherently contradictory with the ALJ's finding in the 'special technique' that [the claimant] was moderately limited in his ability to maintain concentration, persistence, or pace."); *De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, make decisions, and attend and concentrate for extended periods); *Patterson*, 2009 WL 3110205, at *5 (holding, in essence, that the ALJ's finding that the claimant had a moderate limitation in concentration, persistence, and pace was not inconsistent with his RFC determination that claimant could understand, remember, and carry out more than simple instructions).  The ALJ

properly discussed the evidence in the record in making the RFC determination, explained the reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's evaluation of Williams' mental impairments as well as her mental RFC assessment, remand is not required.

### B. New Evidence Submitted to the Appeals Council

Williams also argues that the Appeals Council failed to properly consider a February 13, 2008 vision test performed by Elite Eye Care center that she submitted after the ALJ's decision. (Pl.'s Br. at 10-13.) Specifically, Williams states:

> Plaintiff contends that the Appeals Council erred in failing to consider whether or not claimant meets Listing 2.02, in denying her claim. . . .
>
> . . . .
>
> The Plaintiff contends that the Elite Eye Clinic records constitute material evidence. SAMC Dr. Nwankwo, MD[,] provides support that Williams has vision problems. Dr. Nwankwo notes in the CE report that Williams has blurred vision, wears glasses, and has bilateral double vision. Tr. 602. The evidence in support of Williams' vision loss is documented by medically acceptable clinical and laboratory diagnostic techniques. *20 C.F.R. 404.1526.*
>
> The ALJ does not list vision problems at step 2 of the decision. *Tr. 13.* The Appeals Council adopts the ALJ's Unfavorable Decision without further analysis. *Tr. 1.* The Defendant, then, has never considered the limitations imposed on Williams by her vision problems. . . .

In the instant case, the lack of review of the Elite Eye Care records prevents the Defendant's denial of the claim from being based on substantial evidence. The case should be remanded due to lack of meaningful review of whether or not Williams meets Listing 2.02.

(Pl.'s Br. at 11-13.)

The Appeals Council, in its February 3, 2014 Notice of Appeals Council Action, denied Williams' request for review of the ALJ's decision. (Tr. 1.) Specifically, the ALJ stated that, in reviewing Williams' case, it had reviewed the "additional evidence listed on the enclosed Order of Appeals Council." (Tr. 1.) Such order indicates that the Appeals Council reviewed the medical records dated February 13, 2008 from Elite Eye Care that were submitted by Williams. (Tr. 4.)

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. § 404.970(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 331-32 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* at 332. The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*")). "Evidence submitted for the first time to the

14

Appeals Council is considered part of the record upon which the Commissioner's final decision is based." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010). "A court considering [the] final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee*, 2010 WL 3001904, at *7 (citing *Higginbotham II*, 163 F. App'x at 281-82).

Based on the foregoing, the issue before the Court is whether the new evidence, the February 13, 2008 examination records from Elite Eye Care, that Williams submitted to the Appeals Council diluted the record to such an extent that the ALJ's determination at Step Three became insufficiently supported. To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920 (a)(4)(iii), (d). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled at Step Three. SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); *see also* 20 C.F.R. §§ 404.1526(c), 416.926(c) (stating that opinions that medical or psychological consultants designated by the Commissioner offer on the issue of whether an impairment meets or equals the requirements for a listed impairment will be considered); 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and

simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996).

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619-20.

A review of the February 13, 2008 examination records from Elite Eye Care indicates that Williams' ***unaided*** vision was 20/400 in each eye. (Tr. 872.) However, her ***corrected*** vision appears to be 20/30 in each eye. (Tr. 872; *see* Defendant's Brief at 9.) To meet section 2.02 of the Listing, which deals with loss of central vision acuity, Williams must provide evidence showing that the "[r]emaining vision in the better eye after best correction is 20/200 or less." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 2.02. Thus, the evidence submitted by Williams does not support her claim that she has met section 2.02 of the Listing. As a result, the Court finds that the new evidence does not dilute the record to such an extent that the ALJ's determination became insufficiently supported, and, therefore, remand is not required.

## **CONCLUSION**

The ALJ's decision is affirmed in all respects.

SIGNED March 20, 2015.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

17